UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

RICHARD KRAVETZ,

Petitioner,

v.

RENEE BAKER, *et al.*,

Respondents.

Case No. 3:19-cv-00518-MMD-WGC

ORDER

Richard Kravetz's 28 U.S.C. § 2254 habeas corpus petition is before the Court for final adjudication on the merits. (ECF No. 1.) As discussed below, the petition is denied.

## I.   BACKGROUND & PROCEDURAL HISTORY

In 2009, emergency services responded to a call that Richard Kravetz's 88-year-old mother Sarah was suffering from nausea, disorientation, and flu-like symptoms. (ECF No. 1 at 4-7.) A CT scan revealed a skull fracture behind her right ear. She died weeks later, and Kravetz was charged with her murder. A jury convicted him of count 1: first-degree murder, victim over 60 years of age; count 2: battery resulting in substantial bodily harm constituting domestic violence; and counts 3 and 4: abuse and/or neglect of older person resulting in substantial bodily or mental harm or death. (Exhibit ("Exh.") L at 2-3.)[1] The state district court sentenced him as follows: count 1: life without the possibility of parole, plus a consecutive term of 96-240 months; count 2: 19-60 months; count 3: 24-72 months; and count 4: 24-72 months; counts 2, 3, and 4 to run concurrently with count 1. *Id.* That court filed the judgment of conviction on December 12, 2014. *Id.*

///

---

[1] Petitioner's exhibits A-O are found at ECF Nos. 2-17, and Respondents' exhibits 1-65 are found at ECF Nos. 24-25.

The Nevada Supreme Court affirmed Kravetz's convictions in 2017, and the Nevada Court of Appeals affirmed the denial of his state postconviction habeas corpus petition in 2019. (Exh. M at 2-4; Exh. N at 103-106.)

Kravetz filed his federal habeas corpus petition in August 2019. (ECF No. 1.) Respondents have now answered the remaining claims, and Kravetz replied. (ECF Nos. 34, 38.)

## II.    LEGAL STANDARD

28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), provides the legal standards for the Court's consideration of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693-694 (2002). The Court's ability to grant a writ is limited to cases where "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings,

which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer*, 538 U.S. at 73 (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell*, 535 U.S. at 694).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

To the extent that the state court's factual findings are challenged, the "unreasonable determination of fact" clause of § 2254(d)(2) controls on federal habeas review. *Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004). This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id.* The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous." 393 F.3d at 973. Rather, AEDPA requires substantially more deference:

> .... [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

1    *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir.2004); *see also Lambert*, 393 F.3d at 972.

2        Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be

3    correct unless rebutted by clear and convincing evidence. The petitioner bears the burden

4    of proving by a preponderance of the evidence that he is entitled to habeas relief. *See*

5    *Cullen*, 563 U.S. at 181.

6        **III.    RELEVANT TRIAL TESTIMONY**

7        Mary Leonard, who had been in a relationship with Kravetz that produced two

8    children, testified. (Exh. F at 22-30.) She said that at some point in the summer of 1999,

9    Sarah, who was then in her late 70s, and Kravetz had an argument. When Sarah went to

10   leave, Kravetz directed Leonard to handcuff her, and Leonard complied. Kravetz then

11   took a two-by-four and struck Sarah on the legs. He threatened to kill her, and he kept

12   her handcuffed for several hours. As a result of the incident, Leonard and Kravetz lost

13   custody of their children, who were adopted by another family.

14       Layne Rushforth testified that he is an estate planning and probate lawyer who

15   helped Sarah with her estate after her husband died in the late 1990s. (Exh. F at 31-67,

16   111-123.) In September 1999, Rushforth assisted Sarah in amending one of the family

17   trusts to add a clause that provided that if she were injured or harmed or died in any

18   mysterious circumstances, if one of the beneficiaries—Kravetz and his brother Russell

19   Taylor—proved to be responsible then he would be excluded as a beneficiary. The

20   amendment provided that if Russell was excluded, his half of the trust would go to

21   Kravetz, and if Kravetz was excluded, his half would go to his children. Rushforth said

22   that in 1999, Sarah moved; she told Rushforth she was terrified, she refused to give him

23   her address, providing a post office box instead. A few years before her death, Kravetz

24   became more involved in Sarah's financial affairs. Previously, Sarah had usually

25   communicated with Rushforth in person, but he began to receive correspondence—

26   frequently in Kravetz's handwriting—with Sarah's signature. At the end of 2009, Rushforth

27   received a letter that expressed the desire to remove the clause about harm to Sarah as

28   well as a no-contest clause. It also directed that Kravetz replace Nevada State Bank as

4

trustee. Rushforth had represented Sarah for about ten years, and it had always been very important to her that her two sons be treated strictly equally; Rushforth did not believe that this letter expressed Sarah's wishes. He wrote and informed Sarah that he could not in good conscience continue to represent either of them because "I do not believe that the changes reflected in your documents are in your best interest, and the changes are so significant as to make me question whether or not you are acting prudently and independently." (*Id.* at 56.)

Neurological surgeon Derek Duke testified that when Sarah was in the hospital shortly before she died, CT scans showed bruising, bleeding and swelling in the brain consistent with an impact to her right posterior skull. (Exh. F at 74-110.) On cross examination, Duke acknowledged that the injuries were consistent with an auto accident, blunt force trauma, or a fall.

Henderson Police Officer Athena Raney testified that she was a detective with the special victims unit. (Exh. G at 62-209.) She testified that after interviewing Sarah's other son Russell and Sarah when Sarah was in the hospital, she had Sarah transferred to a different hospital room and taken off the registry because she was concerned for her safety. Raney had a crime scene analyst photograph bruising on Sarah's arm, legs, behind her right ear, and in her right shoulder blade area. She acknowledged that some, but not all, of the bruising appeared to have been caused by medical treatment. It took her several attempts to arrange to interview Kravetz. At one point, Kravetz told Raney by phone that he was in Green Valley in the Las Vegas area, but Raney later obtained a search warrant for Kravetz's cell phone and cell tower records indicated that Kravetz had in fact been in Cedar City, Utah. Raney's investigation revealed that five different properties were transferred from the Kravetz family trust to Richard Kravetz from 2006 to 2009. Regarding the incident in question, Kravetz told Raney that he and his mother were home, he went outside to smoke, and when he returned, he found her lying on the kitchen floor on her left side, semiconscious, by a stool that had been knocked over. He said Sarah complained that her head hurt, and he brought her to her room to lay down with

cold compresses. Kravetz said she was nauseous and vomiting, and he stayed with her in the room throughout the night. He called an ambulance the next day. Raney testified that Kravetz's statements about the incident were inconsistent. Based on the inconsistent statements and Kravetz's failure to immediately seek medical attention for Sarah, Raney arrested him for elder abuse resulting in substantial bodily harm. At that point, Sarah was still alive.

Two physical therapists who had been working with Sarah in the hospital testified that Sarah told them one day that she was in the hospital because she had had a fight with her son on her birthday. (Exh. G at 217, 224.)

Medical examiner Lisa Gavir testified. (Exh. G at 236-292; Exh. I at 104-111.) She testified that Sarah's skull fracture was consistent with being hit with something that has some type of edge to it, like a bat. Her brain injuries were consistent with blunt force injury, which could have resulted from being struck or from a fall. But Gavir stated that it would be very rare to see these types of injuries from a fall. She concluded that Sarah's death was caused by severe traumatic brain injury due to blunt force injury of the head.

Dr. Monsuru Ibraheem testified that he was an internal medicine physician attending Sarah and that he reviewed the CT images and assessed the injury to be acute, that is, fairly new. (Exh. H at 89-156.) He then consulted with a neurosurgeon. He said that it's difficult to say, but that generally one would not see the injuries Sarah sustained from a single fall. Dr. Monsuru testified that Kravetz had requested that his lawyer review Sarah's patient charts; Monsuru had never had such a request. Kravetz also wanted his mother in a room with video surveillance, positioned so that Sarah's lips could be read, to monitor her visits with family and friends.

Jane Copus testified that she was a friend of Sarah's and when Sarah went into assisted living years prior, she spoke with her on the phone frequently and visited at least once a week. (Exh. H at 7-22.) After Sarah was moved out of assisted living, Jane would call her; Kravetz or Sarah's caretaker would answer, and Sarah was never available. Jane stated that she was never allowed to visit Sarah at home. When Jane found out that Sarah

was hospitalized in November 2009, she visited. Sarah told Jane that Kravetz had wanted her to clean the house and had hit her when she refused.

Russell Taylor, Sarah's other son, testified. (Exh. H at 53-82, 164-192.) He grew up with his parents in Los Angeles and had moved to New York City in 2003. He had been very close to his mother. Russell said Sarah reestablished contact with Kravetz about 2007. It was his understanding that Sarah moved out of assisted living due to the cost and was living in a house with a caretaker. When he would call Sarah, Kravetz or the caretaker would answer, and he would have to ask to speak with his mother on speakerphone. He said his mother did not call him nearly as much as she had in the past. On Wednesday, November 25, 2009, Kravetz called Russell and told him that he was checking their mother into the hospital because she had fallen the day before and wasn't acting right. Russell flew to Las Vegas that Friday and visited his mother. He asked her some questions to verify that she was lucid and oriented. He asked her if she remembered what happened and she said, "oh yeah, Richard [Kravetz] beat the hell out of me." Russell asked a nurse to come in, and Sarah was asked again what happened. She said, "he hit me." When pressed, she said "he" was Robert (her deceased husband). Russell talked to the medical staff and ultimately went to the police station and made a report on Sunday.

Rexene Worrell, who at the time of trial was the medical examiner for Mojave County, Arizona, testified. (Exh. I at 15-103.) She reviewed all the medical records, autopsy report, police reports and court proceedings. In Worrell's opinion, Sarah's cause of death was a significant heart attack or coronary crisis. She also opined that Sarah's brain injuries were caused from a fall. On cross examination Worrell testified that she would have listed Sarah's cause of death as heart attack with the trauma to the head as a significant contributing factor.

## IV.   DISCUSSION

### a.  Claims Raised on Direct Appeal

The Nevada Supreme Court discussed one claim in its order affirming Kravetz's convictions:

Kravetz asserts . . . . that the district court erred in admitting evidence of prior bad acts under NRS 48.045(2). We disagree.

This court reviews a district court's decision to admit evidence of prior bad acts for an abuse of discretion and will not reverse that decision absent manifest error. *Chavez v. State*, 213 P.3d 476, 488 (Nev. 2009). Further, we "may review plain error or issues of constitutional dimension sua sponte despite a party's failure to raise an issue below." *Murray v. State*, 930 P.2d 121, 124 (Nev. 1997). To admit evidence of prior acts, the district court must first "determine that: (1) the incident is relevant to the crime charged; (2) the act is proven by clear and convincing evidence; and (3) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice." *Chavez*, 213 P.3d at 488. Although evidence of prior bad "acts is not admissible to prove the character of a person," it may be admitted "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." NRS 48.045(2).

Here, Kravetz failed to object to the majority of the evidence of prior bad acts, and thus, he has waived his objections on appeal. Notwithstanding this waiver, we find no plain error upon review of the record. Further, even the evidence of prior bad acts to which Kravetz did object only constituted a small portion of the State's case. In light of the strong evidence against Kravetz, our review of the record reveals that any error on the part of the district court was harmless. *See Rosky v. State*, 111 P.3d 690, 699 (Nev. 2005) ("Errors in the admission of evidence under NRS 48.045(2) are subject to a harmless error review."). Thus, we conclude that Kravetz is not entitled to the reversal of his conviction.

(Exh. M at 2-4.)

The state supreme court rejected the remaining claims in one footnote:

We note that Kravetz also appeals his conviction based on sufficiency of the evidence. After considering this claim, we conclude that it lacks merit. *See McNair v. State*, 825 P.2d 571, 573 (Nev. 1992) (explaining that the standard of review when analyzing the sufficiency of the evidence "in a criminal case is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt"; *see also West v. State*, 75 P.3d 808, 812-814 (Nev. 2003) (holding that circumstantial evidence creating a reasonable inference that the victim died because of a criminal act instead of natural causes sufficed to support the murder conviction, despite an inability to determine the actual cause of the victim's death). "Moreover, we have considered Kravetz's other assertions of error (regarding the admission of the victim's statements, certain expert testimony, and cell phone location evidence, the jury instructions on felony murder and reasonable doubt, and cumulative error), and we conclude that they lack merit.

(Exh. M at 2-3 & n.1.)

### b. Grounds 2 and 4

Kravetz claims in ground 2 that insufficient evidence was presented to convict him. (ECF No. 1 at 29-33.) In ground 4 Kravetz asserts that he is entitled to a new trial because the State failed to establish that his actions were a substantial factor in Sarah's death. (*Id.* at 38-41.)

"The Constitution prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 309 (1979) (citing *In re Winship*, 397 U.S. 358 (1970)). On federal habeas corpus review of a judgment of conviction pursuant to 28 U.S.C. § 2254, the petitioner "is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id.* at 324. "[T]he standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16. On habeas review, the Court must assume that the trier of fact resolved any evidentiary conflicts in favor of the prosecution and must defer to such resolution. *See id.* at 326. Generally, the credibility of witnesses is beyond the scope of a review of the sufficiency of the evidence. *See Schlup v. Delo*, 513 U.S. 298, 330 (1995).

Kravetz was convicted of first-degree murder in violation of NRS § 200.030;[2] battery resulting in substantial bodily harm constituting domestic violence in violation of NRS § 200.481, NRS § 200.485, NRS § 33.018 and NRS § 193.167;[3] and two counts of

---

[2]Nevada law defines murder as "the unlawful killing of a human being . . . [w]ith malice aforethought, either express or implied." NRS § 200.010(1). Relevant here, first-degree murder is murder "which is (a) Perpetrated by means of poison, lying in wait or torture, or by any other kind of willful, deliberate and premeditated killing" or "(b) Committed in the perpetration or attempted perpetration of . . . abuse of an older person or vulnerable person pursuant to NRS 200.5099." NRS § 200.030(1)(a), (b).

[3]Battery is defined under Nevada law as "any willful and unlawful use of force or violence upon the person of another." NRS § 200.481(1)(a). Battery constitutes domestic violence when it results in substantial bodily harm. NRS § 200.485(5). A defendant commits domestic violence when they commit a battery against any "person to whom the

abuse and/or neglect of an older person resulting in substantial bodily or mental harm or death in violation of NRS § 200.5099.[4]

Evidence adduced at trial showed that when Kravetz came back into his mother's life he isolated her from family and friends and tried to remove the provision in her estate plan that would disinherit him if he harmed or killed his mother. Several witnesses testified that Sarah told them that Kravetz caused her injuries. There was conflicting testimony from two medical examiners, but one of those experts testified that the brain injuries caused Sarah's death at age 88. Her brain injuries were not the sole cause of her death; testimony reflected that she had congestive heart failure and pneumonia, but under Nevada law, "[a] defendant will not be relieved of criminal liability for murder when his action was a substantial factor in bringing about the death of the victim." *Lay v. State*, 886 P.2d 448, 450 (Nev. 1994); *see also Etcheverry v. State*, 821 P.2d 350, 351 (Nev. 1991) ("an intervening cause must be a superseding cause, or the sole cause of the injury in order to complete excuse the prior act."). And as Respondents point out, all of the medical testimony indicated that blunt force trauma was at least a significant contributing factor in Sarah's death.

Having reviewed the trial transcript, the Court concludes that Kravetz has not shown that no rational trier of fact could have found proof of guilt beyond a reasonable doubt. *See Jackson*, 443 U.S. at 324. He has failed to demonstrate that the Nevada Supreme Court decision on federal grounds 2 and 4 was contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court law, or was based on an unreasonable determination of the facts in light of the evidence presented in the

_____

person is related by blood . . . ." NRS § 33.018(1)(a). An enhancement applies when the defendant commits a battery against a person who is 60 years of age or older. NRS § 193.167(1)(d), (2).

[4]Abuse of an older person means willful: "(a) Infliction of pain or injury on an older person" or "(c) Infliction of psychological or emotional anguish, pain or distress of an older person or a vulnerable person through any act, including, without limitation: (1) Threatening, controlling or socially isolating the older person . . . ." NRS § 200.5092(2). An "older person" means a person who is 60 years of age or older. NRS § 200.5092(6).

state court proceeding. *See* 28 U.S.C. § 2254(d). Accordingly, relief on ground 2 and ground 4 is denied.

### c.  Ground 3

Kravetz contends he is entitled to a new trial because numerous hearsay statements by Sarah Kravetz were admitted at trial in violation of his Sixth and Fourteenth Amendment rights.

Federal habeas corpus does not lie to review questions about the admissibility of evidence under state law. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991). Federal courts may not interfere with a state evidentiary ruling but may only consider whether the evidence was so prejudicial that its admission violated fundamental due process and the right to a fair trial. *See id.* at 67-68. Only if no permissible inferences can be drawn from admitted evidence will it violate due process, and even then, the evidence must undermine the fundamental fairness of a trial. *See Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991).

In Nevada, a statement is not excluded by the hearsay rule if: "(a) Its nature and the special circumstances under which it was made offer strong assurances of accuracy; and (b) The declarant is unavailable as a witness." NRS § 51.315.

Under clearly established federal law, the Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant . . . had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004); *Davis v. Washington*, 547 U.S. 813, 821 (2006). The Confrontation Clause applies only to "'witnesses' against the accused, *i.e.*, those who 'bear testimony." *Crawford*, 541 U.S. at 51 (citation omitted); *Davis*, 547 U.S. at 823-24. Thus, nontestimonial statements do not implicate the Confrontation Clause. The determination that a statement is testimonial turns on whether the declarant "made [the statement] under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310 (2009). Moreover, the Confrontation

Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford*, 541 U.S. at 59 n. 9; *see also United States v. Wahchumwah*, 710 F.3d 862, 871 (9th Cir. 2013) (explaining *Crawford* "applies only to testimonial hearsay, and 'does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted'") (citation omitted). Additionally, a Confrontation Clause violation is subject to harmless error analysis. *See Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986). A Confrontation Clause violation is harmless, and does not justify habeas relief, unless it had a substantial and injurious effect or influence in determining the jury's verdict. *See Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993).

The State moved before trial to admit the testimony of the physical therapists, the estate planning attorney, Sarah's friend Jane Copus, and her other son Russell. (Exh D at 69-78.)

The state district court ruled that the testimony was admissible with a limiting instruction under the hearsay exceptions of NRS § 51.105 for a then existing mental, emotional, or physical condition, or NRS § 51.115, statements for the purposes of medical diagnosis or treatment. (Exh. D at 83-91.) That court also concluded that the statements were not testimonial under *Crawford* because they were made to lay witnesses or medical professionals while Sarah was undergoing treatment, not law enforcement investigating alleged criminal activity and the statements bore "particularized guarantees of trustworthiness."

Kravetz fails to demonstrate that the Nevada Supreme Court's decision that federal ground 3 lacks merit was contrary to, or an unreasonable application of, clearly established federal law. The only arguably testimonial statements may have been anything that Sarah said to Detective Raney. But the detective only testified that her concerns were not alleviated after she spoke with Sarah. The Nevada Supreme Court could have reasonably determined that this statement did not reference testimonial hearsay. The state supreme court could have also reasonably concluded that any error

was harmless in light of the fact that other evidence was presented at trial that led to the detective's concerns and investigation. Federal habeas relief, therefore, is denied as to ground 3.

### d.  Ground 5

Kravetz claims that he is entitled to a new trial because the jury was improperly instructed on felony murder.

To obtain relief based on an error in instructing the jury, a habeas petitioner must show the "'instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). Where the defect is the failure to give an instruction, the inquiry is the same, but the burden is even heavier because an omitted or incomplete instruction is less likely to be prejudicial than an instruction that misstates the law. *See Henderson v. Kibbe*, 431 U.S. 145, 155-157 (1977); *see also Estelle*, 502 U.S. at 72. The federal constitution requires the State to prove every element of the charged offense. *See Sandstrom v. Montana*, 442 U.S. 510, 521 (1979) (holding that a defendant is deprived of due process if a jury instruction has, or jury instructions have, "the effect of relieving the State of the burden of proof enunciated. . . on the critical question of the petitioner's state of mind"); *accord Francis v. Franklin*, 471 U.S. 307, 326 (1985) (reaffirming "the rule of *Sandstrom* and the wellspring due process principles from which it was drawn"); *see also In re Winship*, 9 397 U.S. 358, 364 (1970) ("the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged").

Kravetz argues that the following instructions likely caused confusion:

Jury instruction no. 16:

> There are certain kinds of murder which carry with them conclusive evidence of malice aforethought. One of these classes of murder is committed in the perpetration or attempted perpetration of elder abuse. Therefore, a killing which is committed in the perpetration of elder abuse is deemed to be murder of the first degree, whether the killing was intentional or unintentional or accidental. This is called the Felony-Murder Rule.

1
2

The intent to perpetrate or attempt to perpetrate elder abuse must be proven beyond a reasonable doubt.

3   (Exh D. at 108.)

4       Jury instruction no. 17:

5
6

Any person who has assumed responsibility, legally, voluntarily or pursuant to a contract, to care for an older person or a vulnerable person and who:

7
8

(a)    Neglects the older person or vulnerable person, causing the older person or vulnerable person to suffer physical pain or mental suffering;

9
10

(b)    Permits or allows the older person or vulnerable person to suffer unjustifiable physical pain or mental suffering; or

11
12

(c)    Permits or allows the older person or vulnerable person to be placed in a situation where the older person or vulnerable person may suffer physical pain or mental suffering as the result of abuse or neglect,

13      Is guilty of neglect of an older person.

14      "Neglect" means the failure of:

15
16
17
18

(a)    A person who has assumed legal responsibility or a contractual obligation for caring for an older person or a vulnerable person or who has voluntarily assumed responsibility for his or her care to provide food, shelter, clothing or services which are necessary to maintain the physical or mental health of the older person or vulnerable person; or

19
20

(b)    An older person or a vulnerable person to provide for his or her own needs because of inability to do so.

21
22
23

"Allow" means to take no action to prevent or stop the abuse of neglect of an older person or a vulnerable person if the person knows or has reason to know that the older person or vulnerable person is being abused or neglected.

24
25

"Permit" means permission that a reasonable person would not grant and which amounts to a neglect of responsibility attending the care and custody of an older person or a vulnerable person.

26   (Exh. D at 109.)

27      Jury instruction no. 19:

28

14

1
2
3
4

> For purposes of abuse or neglect of an older person, "substantial mental harm" means an injury to the intellectual or psychological capacity or the emotional condition of an older person or a vulnerable person as evidenced by an observable and substantial impairment of the ability of the older person or vulnerable person to function within his or her normal range of performance or behavior.

5   (Exh. D at 111.)

6   Kravetz argues that the jury could have improperly convicted him pursuant to the

7   felony-murder rule (murder committed in the perpetration or attempted perpetration of

8   elder abuse) for inflicting substantial mental harm when physical harm was required. (ECF

9   No. 1 at 41-44.) But this misstates Nevada law; elder abuse includes infliction of mental

10   distress, threatening, controlling, or socially isolating an older person. *See* NRS §

11   200.5092(2). Further, and as Respondents point out, the jury concluded that Kravetz

12   struck his mother because they also convicted him of battery resulting in substantial bodily

13   harm constituting domestic violence. Thus, even assuming, *arguendo*, that the instruction

14   was confusing, the jury clearly concluded that Kravetz was guilty of felony murder for

15   physical elder abuse that resulted in death.

16   Kravetz has failed to demonstrate that the Nevada Supreme Court decision on

17   federal ground 5 was contrary to, or involved an unreasonable application of, clearly

18   established U.S. Supreme Court law, or was based on an unreasonable determination of

19   the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C.

20   § 2254(d). Accordingly, relief on ground 5 is denied.

21   **e.  Ground 6**

22   Kravetz argues that he is entitled to a new trial due to Confrontation Clause

23   violations involving the State's handwriting expert. (ECF No. 1 at 44-47.) Jan Kelly

24   testified that she is a forensic scientist with the Las Vegas Metropolitan Police Department

25   Forensic Laboratory. (Exh. H at 22-51.) She compared writings that were known to be

26   authored by Kravetz with documents detectives gave her. She concluded that certain

27   documents obtained from the estate lawyer were written by Kravetz and some were

28   written in part by Sarah and in part by Kravetz. The State introduced the documents to

show that Kravetz was influencing Sarah's requests that changes be made to her estate plan. Kelly testified that she was the only certified document examiner in Nevada. Per Metro policy, her work was reviewed by a certified document examiner in San Diego and then reviewed again within Metro.

Kravetz argues that the jury "undoubtedly believed that Ms. Kelly's findings were completely accurate as her work had been reviewed by an unknown examiner in San Diego who was never subject to confrontation." (ECF No. 1 at 46.) Kravetz points out that the United States Supreme Court declined to create a "forensic evidence" exception to *Crawford*, holding that a forensic laboratory report, created specifically to serve as evidence in a criminal proceeding, ranked as "testimonial" for confrontation clause purposes. *Melendez-Diaz, v. Massachusetts*, 557 U.S. 305, 329 (2009).

Kravetz's reliance on *Melendez-Diaz* is misplaced. In that case, the Court concluded that the admission of an affidavit by an analyst regarding the weight and type of illegal drugs seized, with no in-person testimony, violated the Confrontation Clause. Here, Kravetz cross-examined the expert about her own conclusions. Notably, Kravetz does not challenge the handwriting expert's personal conclusions that Kravetz authored several documents found in his home. Further, other witnesses testified that Kravetz and Sarah requested changes to the estate plan orally and in writing. Kravetz has not shown that any error had a substantial injurious effect on the verdict. *See Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993). Kravetz fails to demonstrate that the Nevada Supreme Court's decision was contrary to, or an unreasonable application of, clearly established federal law. Federal habeas relief is denied as to ground 6.

### f.  Ground 7

Kravetz contends that the State violated his constitutional rights by admitting records regarding the location of cell phone towers and records and by permitting Detective Raney to testify regarding this information. (ECF No. 1 at 47-50.) Kravetz does not identify what constitutional right was violated. In fact, he acknowledges that no clearly established U.S. Supreme Court precedent exists regarding whether a particular type of

expert is required to testify about cell phone records. *See, e.g.*, *Woods v. Donald*, 575 U.S. 312, 317 (2015) (holding that habeas relief is precluded where "none of [the Supreme Court's] cases confront 'the specific question presented . . .'"). Accordingly, he cannot demonstrate that the Nevada Supreme Court's decision was contrary to, or an unreasonable application of, clearly established federal law. Ground 7, therefore, is denied.

### g.  Ground 8

Kravetz claims that the state district court erred in giving the jury instruction on reasonable doubt in violation of his Fifth and Fourteenth Amendment rights. (ECF No. 1 at 50.)

Jury instruction no. 5:

> A reasonable doubt is one based on reason. It is not mere possible doubt but is such a doubt as would govern or control a person in the more weighty affairs of life. If the minds of the jurors, after the entire comparison and consideration of all the evidence, are in such a condition that they can say they feel and abiding conviction of the truth of the charge, there is not a reasonable doubt. Doubt, to be reasonable, must be actual, not mere possibility or speculation.

(Exh. D at 97.)

While the Due Process Clause requires the government to prove every element of a charged offense beyond a reasonable doubt, *see In re Winship,* 397 U.S. at 364, "the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof. Rather, 'taken as a whole, the instructions [must] correctly conve[y] the concept of reasonable doubt to the jury." *Victor v. Nebraska*, 511 U.S. 1, 5 (1994) (internal quotation marks omitted).

As Kravetz acknowledges, this instruction is permissible under Nevada law. *See, e.g.*, *Elvik v. State*, 985 P.2d 784 (Nev. 1998); *Bolin v. State*, 960 P.2d 784 (Nev. 1998). Kravetz has not shown that the Nevada Supreme Court's rejection of this claim was contrary to, or an unreasonable application of, clearly established federal law. *See Ramirez v. Hatcher*, 136 F.3d 1209, 1214 (9th Cir. 1998) (explaining that Nevada's

reasonable doubt instruction did not violate constitutional principles). Therefore, ground 8 is denied.

### h.  Ground 9

Kravetz insists his convictions must be reversed due to the cumulative effect of trial errors. (ECF No. 1 at 51.)

The Ninth Circuit Court of Appeals has held that "[t]he Supreme Court has clearly established that the combined effect of multiple trial court errors violates due process where it renders the resulting criminal trial fundamentally unfair." *Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007).

Kravetz has not shown that the district court committed error or that any errors deprived him of a fair trial. Kravetz fails to demonstrate that the Nevada Supreme Court's decision was contrary to, or an unreasonable application of, clearly established federal law. Ground 9 is denied.

### i.  Ineffective Assistance of Counsel Claims

Kravetz raised four claims of ineffective assistance of counsel ("IAC"). IAC claims are governed by the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense. *See Williams*, 529 U.S. at 390-91 (citing *Strickland*, 466 U.S. at 687). To establish ineffectiveness, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *See id.* To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See id.* A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id.* Additionally, any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight.

*Strickland*, 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. *See id.*

Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an objective standard of reasonableness, . . . under prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (internal quotations and citations omitted). When the ineffective assistance of counsel claim is based on a challenge to a guilty plea, the *Strickland* prejudice prong requires a petitioner to demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of, the *Strickland* standard. *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *See id.*

The United States Supreme Court has described federal review of a state supreme court's decision on a claim of ineffective assistance of counsel as "doubly deferential." *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). The Supreme Court emphasized that: "We take a 'highly deferential' look at counsel's performance . . . through the 'deferential lens of § 2254(d).'" *Id.* at 1403 (internal citations omitted). Moreover, federal habeas review of an ineffective assistance of counsel claim is limited to the record before the state court that adjudicated the claim on the merits. *See Cullen*, 563 U.S. at 181-84. The United States Supreme Court has specifically reaffirmed the extensive deference owed to a state court's decision regarding claims of ineffective assistance of counsel:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.* at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is

"doubly" so, *Knowles*, 556 U.S. at 123. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S. at 124. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington*, 562 U.S. at 105. "A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Id.* at 104 (quoting *Strickland*, 466 U.S. at 689). "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Id.* (internal quotations and citations omitted).

### j. Ground 10

Kravetz claims that his counsel was ineffective by failing to investigate and obtain further expert medical reports in violation of his Sixth and Fourteenth Amendment rights. (ECF No. 1 at 54-61.)

In support of his state postconviction habeas petition, Kravetz attached a report from a forensic pathologist who opined that Sarah died from "complications of remote blunt traumatic injuries combined with hypertensive arteriosclerotic cardiovascular disease and Alzheimer's dementia." (Exh. M at 35-44.) The pathologist stated that the neuropathology made it impossible to distinguish a fall from an assault and that Sarah's injuries due to the shaking impacts of the brain against the skull were more often seen in falls than assaults.

The Nevada Court of Appeals affirmed the denial of this claim in Kravetz's state petition:

Kravetz argued his trial counsel was ineffective for failing to conduct sufficient investigation into the victim's medical information. Kravetz contended his counsel should have obtained additional expert witness testimony concerning the victim's injuries and cause of death. Kravetz failed to demonstrate his counsel's performance was deficient or resulting prejudice. During trial, the defense presented expert witness testimony concerning the victim's cause of death and the expert testified the victim's head injury contributed to her death, but she likely sustained the injury from

an accidental fall. Kravetz supported his postconviction claim with a report from a new medical expert and the new report was consistent with the testimony presented by the defense at trial. As the new report was consistent with the testimony Kravetz presented at trial, he did not demonstrate his counsel's investigation into the medical evidence fell below an objectively reasonable standard. In addition, there was strong evidence of Kravetz' guilt presented at trial, including the victim's statements prior to her death where she informed others Kravetz became angry with her and caused the fall that resulted in her head injuries. Given the strong evidence of Kravetz' guilt, he failed to demonstrate a reasonable probability of a different outcome at trial had counsel conducted further investigation into the victim's medical records. Therefore, we conclude the district court did not err by denying this claim.

(Exh. N at 103-104.)

The court of appeals correctly points out that the defense expert's trial testimony was consistent with the forensic pathologist's conclusions. All the medical experts at trial acknowledged that Sarah's brain injuries could have been from a fall or an assault. Kravetz has failed to demonstrate that the Nevada Court of Appeals' decision on federal ground 10 was contrary to or involved an unreasonable application of *Strickland* or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d). The Court denies federal habeas relief on ground 10.

### k.  Ground 11

Kravetz argues that his counsel was ineffective for failing to request a proximate cause jury instruction as established by Nevada law. (ECF No. 1 at 61-63.)

Jury instruction no. 20 explained:

A defendant will not be relieved of criminal liability from a murder when his action was a substantial factor in bringing about the death of the victim.

(Exh. D at 112.)

Jury instruction no. 21 stated:

. . . . one who inflicts an injury on another and thereby accelerates his death shall be held criminally responsible therefor. If any life at all is left in a human body, even the least spark, the extinguishment of it is as much homicide as the killing of the most vital being.

1  (Exh. D at 113.)

2      The Nevada Court of Appeals affirmed the denial of this claim:

3          Kravetz failed to demonstrate resulting prejudice. The Nevada
   Supreme Court has explained that "a criminal defendant can only be
4  exculpated where, due to a superseding cause, he was in no way the
   proximate cause of the result." *Etcheverry v. State*, 821 P.2d 350, 351 (Nev.
5  1991). Furthermore, "[a] defendant will not be relieved of criminal liability for
   murder when his action was a substantial factor in bringing about the death
6  of the victim" *Lay v. State*, 886 P.2d 448, 450 (Nev. 1994). Here, the
   evidence produced at trial established Kravetz' act of causing the victim's
7  fall was a substantial factor in her death. Due to that evidence, Kravetz
   failed to demonstrate a reasonable probability of a different outcome had
8  his counsel requested a proximate cause jury instruction. Therefore, the
   district court did not err by denying this claim.
9

10

11  (Exh. N. at 104-105.)

12      As recounted above, evidence was adduced at trial that Kravetz's actions were a

13  substantial factor in Sarah's death. He has not shown that the Nevada Court of Appeals'

14  decision on federal ground 11 was contrary to or involved an unreasonable application of

15  *Strickland* or was based on an unreasonable determination of the facts in light of the

16  evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Federal habeas

17  relief is denied as to ground 11.

18          **I.  Ground 12**

19      Kravetz contends that his counsel was ineffective for failing to object to the

20  introduction of inadmissible bad acts in violation of NRS § 48.045(B).[5] (ECF No. 1 at 63-

21  68.) The bad acts evidence was about (1) Sarah's fear of Kravetz; (2) Rushforth's

22  statement that he wasn't sure whether a letter Kravetz sent him was meant to be

23

24

25  _____

26      [5]NRS § 48.045(2) provides: 2. Evidence of other crimes, wrongs, or acts is not
   admissible to prove the character of a person in order to show that the person acted in
27  conformity therewith. It may, however, be admissible for other purposes, such as proof of
   motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake
28  or accident.

threatening or joking;[6] (3) the lead detective on the case's testimony about concerns that Kravetz was financially exploiting his mother; (4) a doctor's testimony that Kravetz's comments made the nursing staff uncomfortable; (5) the prosecution's suggestion that Kravetz killed his father; and (6) testimony that Kravetz lost custody of his children.

The Nevada Court of Appeals rejected this claim:

> Kravetz failed to demonstrate resulting prejudice. Kravetz challenged the admission of the prior-bad-act evidence on direct appeal. The Nevada Supreme Court concluded Kravetz was not entitled to relief as the evidence of prior bad acts only constituted a small portion of the State's case and there was strong evidence of Kravetz' guilt produced at trial. *Kravetz v. State*, Docket No. 67240 (January 25, 2017). Given the Nevada Supreme Court's conclusions concerning the prior bad acts and the victim's statements indicating Kravetz caused her injuries, Kravetz did not demonstrate a reasonable probability he would not have been convicted had counsel successfully objected to introduction of the prior-bad-act evidence. Therefore, we conclude the district court did not err by denying this claim.

(Exh. N at 105.)

First, the State introduced evidence that Kravetz's father died of a head injury in 1997 to question why Kravetz delayed seeking medical treatment when his mother suffered a head injury. Kravetz's claim that the State insinuated that he was involved in the death of his father is belied by the record. Second, Sarah's alleged fear of Kravetz is not a prior bad act. Third, Kravetz did not challenge the admission of the letter that he sent to Rushforth; thus, the jury examined the odd letter for itself. Finally, the concerns about financial exploitation, making the nurses uncomfortable, and losing custody of his children (which he blamed partly on his mother) were properly admissible to show motive, intent, and a plan. Moreover, considering the evidence presented, Kravetz cannot demonstrate prejudice. Trial testimony reflected that Kravetz was angry with his mother for getting involved in his family affairs and attacked her with a two-by-four. The State also presented evidence that when Kravetz came back into his mother's life he isolated

---

[6]The letter stated: "don't start worrying yet. I have something that will curl your toes. It's better to handle this now rather than in another setting, Mr. Rushforth, lol." (Exh. F at 61.)

her from her friends and family and tried to make changes to her estate plan, including removing the provision where he would be disinherited if he caused his mother's death. After Sarah ended up in the hospital with a skull fracture, she told multiple witnesses that Kravetz was responsible for her injuries. Kravetz's explanation to law enforcement was rife with inconsistencies and misrepresentations. And experts, including defense experts, testified that Sarah's brain injuries contributed to her death.

The Court concludes that Kravetz has failed to demonstrate that the Nevada Court of Appeals' decision on federal ground 12 was contrary to or involved an unreasonable application of *Strickland* or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d). Accordingly, 12 is denied.

### m. Ground 13

Kravetz asserts that his convictions must be reversed due to the cumulative effect of ineffective assistance of trial counsel.

The Nevada Court of Appeals affirmed the denial of this claim in Kravetz' state postconviction petition: "In light of the strong evidence of guilt presented at trial, Kravetz failed to demonstrate he was entitled to relief even considering any errors cumulatively. Therefore, we conclude the district court did not err by denying this claim." (Exh. N at 105.)

Kravetz has not shown deficiency and prejudice with respect to any of his claims of ineffective assistance of counsel. The Nevada Court of Appeals' rejection of the cumulative error claim was not unreasonable. Ground 13 is denied.

The petition, therefore, is denied in its entirety.

### V.   CERTIFICATE OF APPEALABILITY

This is a final order adverse to the petitioner. As such, Rule 11 of the Rules Governing Section 2254 Cases requires this court to issue or deny a certificate of appealability ("COA"). Accordingly, the court has *sua sponte* evaluated the claims within

the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *See id.*

Having reviewed its determinations and rulings in adjudicating Kravetz's petition, the Court finds that none of its rulings meets the *Slack* standard. The court therefore declines to issue a certificate of appealability for its resolution of Kravetz's petition.

## VI.    CONCLUSION

It is therefore ordered that the petition (ECF No. 1) is denied.

It is further ordered that a certificate of appealability is denied.

The Clerk of Court is directed to enter judgment accordingly and close this case.

DATED THIS 4th Day of January 2022.

_____
MIRANDA M. DU, CHIEF JUDGE
UNITED STATES DISTRICT COURT